IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| State Farm Fire and Casualty Company, ) | C/A No.: 0:12-151-MBS-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Kim M. Nivens, Robert B. Nivens, ) | |
| Laurie Hatcher, Hope L. Hubbard, ) | REPORT AND RECOMMENDATION |
| David Burton Wright, Thomas ) | |
| Stephen Jones, Tia Jones, Joshua ) | |
| Lane Carpenter, and Christina ) | |
| Queen, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This declaratory judgment action comes before the court on the motion for summary judgment [Entry #77] filed by plaintiff State Farm Fire and Casualty Company ("State Farm") on Homeowner's Policy No. 40-B9-4241-5 (the "Policy") [Entry #77-3] it issued to defendant Kim M. Nivens ("Kim") on property she shared with her husband, Ronald Brent Nivens ("Brent") (together "the Nivens"). State Farm argues the Policy does not provide coverage for injuries and damages sustained as a result of a series of automobile accidents on September 29, 2011, when Brent's bull left its pasture and was struck on Highway 55 by three cars in succession owned and/or occupied by the remaining defendants. This matter was referred to the undersigned pursuant to Local Civil Rule 73.02(B)(2)(e) (D.S.C.) because the Nivens and defendant Christina Queen are proceeding pro se. Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge. Having considered the

briefing of the parties [Entry #77, #82, #83, #84, and #92], the undersigned recommends denying the motion for summary judgment for the reasons that follow.

I.     Factual Background[1]

In 1998, the Nivens moved onto a tract of land next to the cattle pasture of Brent's grandparents, Mr. and Mrs. Douglas. (Brent Dep., 8:13–18; 18:15–21; Douglas Dep., 7:21–25.) Brent worked as a truck assembler at the local Freightliner factory for some 14 years, but has always enjoyed being around cattle. (Brent Dep., 8:25–9:3; 97:23–25.) Kim worked in the accounting office of a local business and enjoyed keeping horses on their property. (Kim Dep., 11:18–20; 38:16–18.)

Mr. and Mrs. Douglas had taken care of their cattle herd and their 73 acres of property until Mr. Douglas broke his hip. (Douglas Dep., 5:21–23.) Thereafter, Mr. Douglas gave Brent four cows and asked that he take care of the herd and fence the pasture. (*Id.* at 17:7–20; 19:8–16; 25:7–14; Brent Dep., 15:14–17:7.) Upon Mr. Douglas's death, Mrs. Douglas could no longer care for the cattle or land, so she gave Brent the remaining cattle to take care of on her pasture. (Douglas Dep., 49:24–50:8; 20:20–21:17; 37:7–11.) Brent agreed to give Mrs. Douglas two calves per year, or their monetary equivalent, approximately $800–$1000/year. (*Id.* at 21:1–4; 36:14–17; 20:20–21:4; 23:11–21; Brent Dep., 69:5–21.)

---

[1] The full deposition transcripts of Brent Nivens [Entry #82-1], Kim Nivens [Entry #82-2], and Mrs. Douglas [Entry #82-3] are available on the docket. The citations herein are to the page numbers of the depositions (not to the docket entry pages).

Brent was occasionally laid off from Freightliner due to the economy. (Brent Dep., 84:4–85:1.) When he was laid off, the majority of his time was spent caring for the home and the children. (Kim Dep., 131:22–25; 132:1–14.) The amount of time Brent spent caring for the cattle was the same whether or not he was working at Freightliner. (*Id.* at 131:22–132:14.) Kim's salary supported the family. (*Id.* at 131:10–16.)

Brent bought a bull, bred the cattle, and produced calves, some of which he sold for his grandmother. (Brent Dep., 15:14–16:1, 67:14–25.) He sold other cattle to maintain the remainder of the herd. (*Id.* at 89:1–91:2.) The Nivens purchased a tractor to cut and bail hay. (*Id.* at 107:13–25.) They constructed several barns, goat pens, chicken coops, and horse barns on their property, all of which were visible from the main house. (*Id.* at 106:24–107:6; Douglas Dep., 45:11–20.) Kim called State Farm and added the tractor and the barns to the Policy. (Kim Dep., 88:24–89:8, 91:7–92:7, 106:24–107:8.) Several months prior to the accident, the Nivens made a hail damage claim for their home. (*Id.* at 54:4–9.) A State Farm adjuster went to the property and adjusted the claim and would have been able to see the Nivens's horses and barns. (*Id.* at 121:2–7; Brent Dep., 50:4–51:12, 107:3–6.) State Farm never asked the Nivens if they were operating a business or farm and never offered them farm coverage. (Kim Dep., 96:4–98:8; 101:5–14; 119:13–120:8.)

As of the date of the accident, Brent owned 10 cows and one bull. (*Id.* at 15:3–7.) Brent testified he did not use the cows for dairy purposes and only once slaughtered a cow, keeping the meat for himself. (*Id.* at 78:10–21.) He testified that although it was

3

not profitable, he continued to do it because he "just always liked farming and being around animals." (Brent Dep., 97:21–25.)

Kim prepared and filed the family tax returns, although she has no formal tax return training. (Kim Dep., 123:17–23.) She filed a Schedule F Profit or Loss From Farming with their federal income tax returns, taking deductions for losses incurred from Brent's cattle business. (*Id.* at 14:20–15:21; 49:16–51:3.)

On September 29, 2011, the bull left the pasture and was struck first by three separate vehicles. [Entry #1 at ¶ 12]. On the night of the accident, Brent was on his way to work at Freightliner, and Kim was home with the children. (Brent Dep., 43:12–44:18; Kim Dep., 48:3–18.) When they found out that their bull had caused the accident, they filed claims with State Farm. (Kim Dep., 70:3–24; 121:2–7.) State Farm representatives told Kim that she had nothing to worry about, that she did the right thing to call in the claim, and that State Farm would take care of her. (*Id.* at 71:3–72:9; 98:23–100:1.) State Farm later informed Kim that it was denying coverage. (*Id.* at 86:25–87:7.)

II.  Discussion

In its motion, State Farm argues that it is not obligated to provide coverage based on two exclusions in the Policy: (1) the "business pursuits" exclusion (precluding coverage for bodily injury or property damage arising out of or in connection with a business engaged in by an insured), and (2) the "owned premises" exclusion (precluding coverage for bodily injury or property damage arising out of a premises owned by an insured that is not an insured location).

4

A.	Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

Where a motion for summary judgment presents a question as to the construction of a written contract, the question is one of law if the language employed by the agreement is plain and unambiguous. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 822 (S.C. Ct. App.1999). Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Cincinnati Ins. Co. v. Urgent Care Pharmacy, Inc.*, 413 F. Supp. 2d 644, 647 (D.S.C. 2006). Rules of construction of an insurance policy require clauses of exclusion to be narrowly interpreted and clauses of inclusion to be broadly construed. *Auto-Owners Ins. Co. v. Madison at Part West Prop. Owners Assoc.*, 834 F. Supp. 2d 437, 443 (D.S.C. 2011). In interpreting insurance policies, courts should consider constructions of policies

that "permit a sensible and reasonable interpretation rather than one that will lead to absurd consequences or unjust results." *In re Georgetown Steel Co., LLC v. Capital City Ins. Co.*, 318 B.R. 313, 321 (D.S.C. 2004).

  B. Analysis

    1. Business Pursuits Exclusion

  The Policy provides that State Farm will, absent an applicable exclusion, pay up to its limit of liability for damages for which the insured is legally liable and provide a defense. [Entry #77-3 at 34]. State Farm contends that coverage is excluded under the business pursuits exclusion, arguing that Brent's part-time activity taking care of the cattle constitutes a business pursuit for insurance coverage purposes. The Policy specifically excludes coverage for:

> II.1.b. bodily injury or property damage arising out of business pursuits of any insured or the rental of any part of any premises by any insured. This exclusion does not apply: (1) to activities which are ordinarily incident to non-business pursuits.

[Entry #77-3 at 34]. The definitions portion of the Policy states that "'business' means a trade, profession or occupation. This includes farming." [Entry #77-3 at 27].

  In analyzing whether the business pursuits exclusion applies, the court is guided by the South Carolina Supreme Court's two-prong test in *State Auto Prop. & Cas. Ins. Co. v. Raynolds*, 592 S.E.2d 633, 634 (S.C. 2004), which includes a continuity prong and a profit motive prong.[2] The continuity prong examines whether the insured's business is a

---

[2] In *Raynolds*, a couple, otherwise employed, also operated a dog breeding business out of their home for nearly fifteen years and were insured under a standard homeowners

customary engagement or stated occupation and the amount of time and resources involved with the business. *Id.* at 636.

State Farm argues the continuity prong is met by evidence that for several years the Nivens (a) have owned cattle, (b) have certified to the IRS that Brent is in the cattle business, and (c) have had a financial arrangement with Brent's grandmother. [Entry #77-1 at 8]. State Farm argues that the court can evince a profit motive from the Nivens's tax deduction for losses incurred from the cattle. *Id.*

The argument against State Farm is that Brent's cattle activities reflected the normal activities of a family that owned livestock for recreation, not a business. The Nivens only had cows for approximately 3½ years. (Brent Dep., 16:2–12.) They had not made extensive efforts to modify their home or property to accommodate the cows. (Brent Dep., 20:3–8.) They owned only a few cows, usually less than a dozen. They did not have a business plan, business cards, advertising, signs, business records, or a separate address or telephone in connection with the cattle. (Kim Dep., 112:6–113:8, 114:5–14.) They never made a profit (*Id.* at 130:13–16), and the size of the herd would not create a profit. (*Id.* at 112:6–113:8, 130:13–18, 111:4–12.) Kim testified that they would have continued owning cattle even if they never made a profit. (*Id.* at 113:16–23.)

The undersigned cannot determine at this state of the proceedings that State Farm

---

policy. They attended between 40 to 70 dog shows a year, had business cards, and advertised their business, which grossed between $5,000–$12,000/year. They deducted their costs on a Schedule C on their taxes. They made a claim for personal injury on their homeowners policy after one of their dogs bit their houseguest, a professional dog

7

has proved the requisite evidence of continuity as required by *Raynolds*. Even if the continuity prong were established, based on the recited facts and evidence in this case, the undersigned cannot glean as a matter of law that there was a profit motive.

As to the profit motive of the *Raynolds* test, the Supreme Court held:

> The profit-motive prong . . . may be satisfied when the activity in question is shown to be such an activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements. . . . However, we recognize that the concepts of profit motive and actual profit are not identical and while the Raynolds' overall income from selling or breeding the dogs may not have produced a profit, evidence suggests that they at least had a motive to cover their costs.

*Raynolds* at 636 (citations omitted).

Although the Nivens admittedly would have liked to have covered their costs, they had no realistic hope of doing so given the limited number of cows they owned. Brent's grandmother stated that the $800–$1000/year she received annually from her grandson was not important to her and that she did not consider it rent. (Douglas Dep., 36:25–37:11.) Further, it does not appear that such a limited amount could be considered a commercially reasonable amount of rent for some 73 acres of pasture land. Brent's grandmother testified the benefit she received from Brent's cattle business activity was assistance in maintaining her late husband's cows and their extensive farmland. *Id.*

State Farm points to the Nivens's filing of the Schedule F as proof of a profit motive. [Entry #77-1 at 8]. However, "[w]hether an activity is a business pursuit is

---

handler. The Supreme Court applied the two-pronged test and found that the business pursuits exclusion applied.

almost always a factual question for determination by the trier of fact." *State Farm Fire & Cas. Co. v. Friend*, 478 So.2d 1198 (Fla. App. 4 Dist. 1985); *Pacific Indemnity Ins. Co. v. Aetna Casualty & Surety Co.*, 688 A.2d 319 (Conn. 1997) (holding "the determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry"). As U.S. Tax Court case law provides, many factors should be considered in determining whether an activity is engaged in for profit, not simply whether a Schedule F is filed. *See e.g., Sanders v. Commissioner of Internal Revenue*, 1999 WL 416975, No. 24707-96 (U.S. Tax Ct. 1999) (holding no business or profit motive on a horse ranch operation even though Schedule F was filed for several years). The Income Tax Regulations provide the following nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. 26 C.F.R. §1.183-2(b). Further, no one factor is determinative. *Id.*

While some of the facts cited by State Farm do not preclude applicability of the business pursuits exclusion, it cannot be said as a matter of law, based on the record, that

the exclusion applies in this case. Rather, the undersigned submits that there is at least a genuine dispute of material fact as to whether Brent's cattle activity evinced the continuity and profit motive necessary to constitute a business pursuit under *Raynolds*. Therefore, summary judgment is not appropriate on the business pursuits exclusion.

        2.        Owned Premises Exclusion

State Farm next contends that coverage is excluded under the owned premises exclusion because "the Nivens are paying Ms. Douglas for the use of the land when they sell two cows each year and give Ms. Douglas the sales price of the cows." [Entry #77-1 at 8]. The Policy specifically excludes coverage for:

> II.1.d. bodily injury or property damage arising out of any premises currently owned or rented to any insured which is not an insured location. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured. This exclusion does not apply: . . . (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

[Entry #77-3 at 34]. State Farm argues that Mrs. Douglas's pasture is "farm land rented to the Nivens where the cattle were located at the time of the incident," and that such land falls outside the definition of an "insured location" because it had a pole barn (Kim Dep., 20:8–11), which State Farm seems impliedly to argue constitutes a building. [Entry #77-1 at 9]. The Policy does not define a "building," and at the summary judgment stage, the undersigned finds there is a question of fact as to whether the pole barn should be considered a building for purposes of this exclusion.

Therefore, the undersigned recommends denying State Farm summary judgment

10

under the owned premises exclusion of the Policy.

III.     Conclusion and Recommendation

For the foregoing reasons, it is recommended that the court deny State Farm's motion for summary judgment [Entry #77].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 17, 2013                                                          Shiva V. Hodges
Columbia, South Carolina                                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).